Can I just take you to the end of what both the Bankruptcy Court and the, I don't remember, this one went to the BAP or the District Court said in rejecting all these claims. They both urged your clients to get together with the trustee and state what the claims are, resolve them because what's not going to happen and what shouldn't happen is that your clients get their cake and eat it too. They are not going to be able to remove the trustee or get the residual $30 million out of this estate without, and then come back and sue the trustee later. It's just not going to happen. So why is it that you can't take the advice of all the other judges that have talked to you about these issues and sit down and resolve this matter so that the estate can be closed? It would be very nice to resolve this matter. I've been involved in this case for many years. I understand there's some upwards of 30 claims going on. But the resolution, at least on the trustee side of it, has to be a release of claims and we're not going to agree to that. We don't believe that we should be compelled to agree to that. What are your claims? Why don't you assert them then? The claims are claims that we may not know about at this point in time. And it's also completely unfair for the trustee to say, I have to hold on to your estate in case you sue me. That way I have a fund to protect myself. But really what's going on is that it's preventing the Keynans from access to those funds. How can they hire experts to look at the thousands and thousands of boxes of documents and analyze whether or not the trustee did do something wrong or not? Well, you don't get to – it doesn't work that way. You have – the plan had an approved indemnification clause. And there's no law that allows you to remove the trustee right now. So he's entitled to indemnification out of the estate. That's just the way – bankruptcy law does not work the way your clients seem to want to manipulate it. Well, then the converse would be that bankruptcy law provides that estates can be held open forever. Because there's always the possibility of a claim. Oh, that's not – the provision – the provision in the plan permits you to sue him if he's grossly negligent or has acted with willful misconduct. So all you would be giving up is – suits other than for gross negligence and willful misconduct, right? We are – we are not saying that we want to sue the trustee for negligence. And we don't think that the plan is appropriately – would appropriately allow the trustee indemnification for negligence, even though it's in the plan because I think it's an illegal provision. But if what the Court is saying is that notwithstanding any release that we might give to the trustee who would still be entitled to sue for fraud or gross negligence, then I'm sure that Mr. Keenan most likely would agree to that. But beyond that – Well, I meant to come lately to this plan, but my understanding – I, off the top of my head, don't see why a liquidating trustee could keep the plan open to preclude a lawsuit – a set of lawsuits the plan allows. The plan allows lawsuits for gross negligence or willful misconduct without indemnity. And all he's trying to do is preserve his indemnities. Indemnity is for negligence. It's not for gross – gross negligence or willful misconduct. And maybe he should start again with a mediator. And I agree. So why is he holding on to the estate? Is that what's necessary? Have you agreed to releases with regard to all negligence claims? In fact, in a subsequent motion, yes, Your Honor. So do you think this case ought to be mediated so that you can finally close this matter? Well, I have no objection to trying, Your Honor. If maybe with the comments of the Court, those can be taken into light, I wouldn't have a problem with that, making that attempt. But I believe – It seems like right now it's just an incredible waste of judicial resources to keep going through all of this when the plan says what it says. And if the trustee's being unreasonable and trying to get a broader release than he's entitled to under the plan, then in mediation that would be, you know, worked out. And that's fine. And we really don't have a problem with that. What we have a problem with is that the interpretation of the plan by the trustee and Judge Bowie is that because you're not giving me a full and complete release, then I'm not going to give you your estate back. And that's not what the plan says. All right. Can we ask the – are you the trustee or the representative of the trustee? Counsel for the trustee. The trustee is present. Okay. Well, you can have the remainder of your time to sit down for a second. I just want to figure out if that's really what's going on here. I'd like to speak to counsel for the trustee. Good morning. Edward Silverman on behalf of the trustee who is present. All right. We have attempted to mediate through this Court's mediation program. We had a full day mediation in 2000, I think about two and a half years ago. I appeared before Your Honor on two appeals. I remember these cases, actually. You and the other panel members strongly suggested we mediate again. Yes. I personally contacted the mediator and asked for her assistance. She did the telephone contact back and forth. We didn't have a face-to-face mediation at that time. And the mediation efforts were unsuccessful. All right. Let's see if you can fill us in a little on where things stand. My understanding is that there was – the debtor did make a motion to close the estate. Excuse me. It was the trustee who made the motion to close the estate. I'm sorry. And the debtor didn't agree because – I don't know if this is in the record or not. I don't know if it's – He filed a written opposition. I'm sorry? The debtor filed a written opposition. Yes. What they said. Actually, the debtor didn't file a written opposition. There was no opposition. Debtor showed – debtor's counsel showed up at the hearing and said, I object. What is the gross answer to my question? The gross answer is – Am I generally correct that any claims for gross negligence or willful discontent come out the other end of the estate because they're not even – even within the estate, they're not accepted? I'm sorry, Your Honor. I don't understand. What I'm saying is this. If the trustee under the plan is not liable for any error or business judgment, but he is liable for gross negligence or willful misconduct under the plan, I'm assuming, therefore, that he's not making it a condition of closing the plan that he not be sued for gross negligence or willful misconduct. He's just making a condition that he not be sued for business – for what the plan protects him from. My understanding of the position that he's taken thus far is that he can be sued for anything, and he has defenses. What he wants is the indemnity provision in place in the event – and we believe it will happen – in the event he does get sued. So you're saying if the plan is closed, then the indemnification provision no longer is closed unless there's a – there's another agreement. Where is the indemnity provision in the plan? It is Article 17C, Excerpts of Record, page 791. Maybe I could fast forward, and admittedly, I'm going outside the record, and you're welcome to cut me off, but the trustee went back about a year and a half later and filed a second motion to close the case. The debtor also opposed that but was unsuccessful in his opposition. The court did enter a closure order. So there is an order in place as of June 2003. Well, we could certainly take judicial notice of that. I would be glad to submit it, Your Honor. If you'd like, I – there is a closure order in place, June of 2003. There was an appeal to the district court. That order was affirmed. There was a further appeal to this court, and that appeal was dismissed. That order is final, final, final, final. The trustee has been proceeding under the June 2003 closure order. And, in fact, there have been further proceedings, further orders, and further appeals on how to effect the closure order. To make a long story short, over 700 boxes of documents have been produced. The document production phase of the closure order should end next month. We'll move into the next phase, and it is approaching closure, which is not to say the trustee will not mediate. The trustee has always been willing to mediate. I just wanted to advise the court. The closure order contain an indemnification provision? No. Yes. The closure order gives a bar date by which the debtor and those associated with the debtor must assert any claim, negligence, gross negligence, intentional – any claim. It's open. So they give them a time certain so that the trustee knows he's going to have what claims he's dealing with. Yes. And then, after the next phase, the debtor will get his assets back, and there will be a reserve. It seems to me that if there's been a closure order, that this case is moot. Why are we hearing these arguments about removing the trustee or closing the estate if there's been a final closing order? I did think of that, Your Honor. And, in my view, the arguments raised by the debtor have nothing to do with whether there's a closure order. There's a claim that the trustee should be removed. Well, if he's not there anymore, then he's been removed. I'm sorry? If the estate's closed, hasn't he gone? The closure order only sets up the stage of the case. He's not gone yet, is the point. That's correct, Your Honor. There have to be further approvals. We will be going back to court saying, we've done the first step of the closure order. Please bless this, Your Honor. And Judge Brewer will listen to our side, and I'm sure the debtor's opposition. Then we go on to the next phase of the closure order, which should be shorter. And the wheels are in process, and I would be glad to submit those orders to the court with a request for judicial notice, if that would assist the court. If the court does reach the merits of this appeal, I really want to emphasize that it is an easy appeal. We have a debtor who made a motion to remove a trustee and submitted a ton of evidence. The trustee opposed the motion and submitted a ton of evidence. The court looked at all the evidence, heard more than an hour's worth of oral argument, and issued a lengthy, lengthy ruling from the bench, making specific factual findings, and concluding, reporters' transcript, page 59, and supplemental excerpts, page 10, the trustee has more than adequately responded. And that's after going through all of the different facts. So really, what we have in this appeal is the debtor having to convince this court that the trial court's factual findings are clearly erroneous, and we contend the debtor just hasn't met that burden. As an alternative argument, as a secondary argument, we have the issue of preclusion and collateral estoppel arguments. They are separate. They are independent. And I'd be glad to speak to them, but I believe that this entire appeal, if it's heard on the merits, can be resolved under the clearly erroneous standard. All right. Thank you, counsel. Thank you. There is a closure order in place that wasn't mentioned, was that the closure order is a closure order that is not a closure order. It says that if the debtor brings any claim, the estate won't be returned to him until the claims are all finally disposed of. So, in effect, that closure order, if Mr. Silverman were asked, he couldn't tell you when the estate is going to be returned to the debtor. Well, isn't there a time certain for when those claims need to be brought in the closure order? It's not a time certain. It's dependent on a number of factors. And also, that appeal is before you, and the motion will, when you get that appeal, you'll see that the court has artificially imposed statutes of limitation against the debtor, which we contend the court cannot do. The statutes of limitation are what they are. That's another appeal that we're getting. That's another appeal, but less that you think that that closure order renders this case moot. And it also doesn't render this case moot on another point. Just because there's a closure order doesn't mean that the trustee hasn't committed these acts that we contend were at the very least negligent. It's not warranted. I understand that. It would just be nice to have the claims asserted so that those the substantive claims in this matter can be dealt with as opposed to the kinds of appeals that have been brought here. Yeah. The problem is that we can never agree that all claims can be brought now because and within a specified period of time, because, for example, fraud, it runs from the date of discovery. So we don't know if in the future we're going to find that there was something that was concealed. So we're in a position where we're going to find that there was something that was concealed. But, you know, routinely, you're a lawyer in California. You know the code provision in California. When you're trying to resolve a case in good faith, routinely there's a waiver provision of, you know, release of all claims known or not known. And it's included so that you can resolve the matter in front of you and move on. Isn't that what your clients really want to do? Only one is our estate back. Why do we have to release claims to get the estate back? No, that doesn't seem to be true. We want to get our estate back and the ability to sue the trustee afterwards without saying now what you're going to sue him for. So it appears that it isn't even that you have to waive your right to sue him. You just have to say what you're going to sue him for and try and resolve those claims as part of the overall settlement and get your estate back. Well, actually, no. Even with that closure order, as I mentioned, even if we say here are the claims that we know of and these are the claims that we're going to bring, that doesn't mean we get the estate back. That doesn't mean the — I mean, it wouldn't be a problem if we got the estate back or the bulk of the estate back and the trustee kept something as a reserve maybe for the indemnity fund, although I don't think that's even allowed under the plan. The plan calls for the estate to be returned after all creditors are paid. The indemnification obligations exist irrespective of whether or not the trustee is holding on to the estate. And given the volume of money that you've seen in the pleadings, it's not realistic to say, oh, there won't be enough money available to reimburse the trustee for any defense costs. But you do understand that all these appeals, it eats up the estate. The more you're doing this and not simply resolving it, the more the trustee is going to be able to reimburse himself for defense costs. I mean, this — you know, it's — you're really in this — you're creating a situation that is going to diminish the estate in the long run. Why do you want to be doing that? Well, I don't believe we're creating the situation. We've been put in the position as a result of the Court's erroneous interpretation of the indemnification provision. I think this was a voluntary Chapter 11 petition, right? Yes, it was. All right. Right. But in terms of the indemnification provision, your interpretation of that, it's not barred by collateral estoppel. In fact, I would point out to you that even Judge Bowie, he admitted in the transcript of this motion, underlying motion, he never thought that this case would still be pending in 2002 when this motion was brought. Yeah, I was surprised to see these current appeals myself. Nobody would have thought that, which means that at the time that the judge confirmed the plan and approved this indemnification provision, he didn't read it that way. He didn't read it to create this chicken-and-egg problem that he's called it. Right. All right. Here's the thing. I don't think oral argument is going to — you're arguing — either of you're arguing these issues is going to resolve your case. And you do need to get it resolved because it's a terrible expense to everybody and it's diminishing the estate and it's a burden on the appellate system. And I will ask your clients to please stop talking in court again. And so I guess we're going to have to consider this current appeal on the merits. I don't — we'll talk about whether or not we need to see the judicial closure order. But I, like all the other judges who have looked at this, strongly recommend you to either go back to mediation, get an ADR person to help you out, or I don't know, maybe — perhaps you can do it yourself, but I would get a settlement judge or ask the judge in this case to act as a settlement judge to get this matter resolved. Well, I will certainly — We could also send you back to the Ninth Circuit mediators if that's something you want. I don't — You can ask afterwards. You can ask afterwards. What we can do is issue an order giving you some time to make that decision. In other words, not submitting this case and giving you a few weeks to come back to us and tell us whether you want to spend time mediating. That's fine, Your Honor. All right? All right. Thank you. Thank you, Your Honor. I didn't understand the Court's comment. Did the Court want the closure order or not? We're going to think about it. I'm not — I mean, I think — we're going to think about it. We'll issue an order if we want it. Okay. All right? Thank you very much. All right. Kenan v. Powell is submitted. And we'll go to S.K. versus U.S.
judges: Wardlaw,berzon, Fitzgerald